of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having a maniform of goodness before the Honorable United States Court of Appeals are admonished to give their attention, for the Court is now sitting. God, the United States, and His Honorable Court. Good morning. Welcome to this legality edition of the Fourth Circuit. We're happy to be here together once again, although virtually, Judge Richardson, Judge Quattlebaum, and I. And we look forward to hearing arguments in our first case. Amaya v. Barr. Mr. Connare, whenever you're ready. Okay. Good morning, Your Honors. May it please the Court, my name is Abdul Connare, and I represent the petitioner in this case. I believe that the decisions of the BIA and the IJ must be reversed for four reasons. Number one, the BIA failed to engage in a proper analysis of the particular social group of the respondent. Number two, the BIA failed to engage in a proper CAT analysis in this case. Number three, there is enough evidence, independent evidence, in this record to show that the respondent will likely be tortured in the country for removal and therefore be eligible for CAT. And number four, there's sufficient evidence in this case to show that the respondent has satisfied the proposed social group of prosecutorial witness under matter of CAT and also under Oriana v. Attorney General. And as far as the first reason, failed to engage in a proper analysis, if you look at the BIA decision, Your Honor, the only statement the BIA made was the fact that the proposed social group was diffused and lacked particularity. That is it. There is no explanation as to why it is diffused or why it lacks particularity. Here, it is particular because... I have a question. Well, there are a number of circuit court decisions that agree with the BIA that that particular social group, former members of a gang, is diffused and lacks particularity. Why shouldn't we follow the other circuit's lead? And as a matter of fact, there are a lot of other circuits as well who agree saying that it is not diffused and it is indeed particular. In the Seventh Circuit case in Benitez-Ramos... So, counsel, isn't the only one... The WGR BIA opinion isn't the only one that reaches the different result prior to the WGR opinion? As a matter of fact, the WGR opinion did not say it is not diffused nor particular. You see, when you look at a solemn or a withholding case, you have to look at cases on a case-by-case basis. You can't just look at WGR and say, hey, by the way, all cases, all particular social groups, is diffused or amorphous. That is not the case. It is done on a case-by-case basis. There is no proper analysis at all. You can't do an analysis and say, hey, by the way, WGR held this. MEVG held this. No. There was no proper... Counsel, you mentioned WGR, and I want to talk just a second about it. Neither party here cites to or relies on Chevron. But at least in the Fourth Circuit, the government cannot waive reliance on Chevron. We have held that that's a standard of review and that we must independently analyze whether Chevron applies. Given that WGR was a three-member presidential panel, tell me whether you agree that Chevron should apply to the case, whatever it stands for. I understand you disagree, perhaps, with what it actually means. But whatever it stands for, it's entitled to Chevron deference. Do you agree with that? I really don't believe it should be accorded any Chevron deference at all. Tell me why. Sure. The particular social group, yes, indeed, it is not defined in the INA. Yes, the BIA is tasked with the responsibility of interpreting the laws of INA. However, every case is different, Your Honor. Every case is different. We need to look at the facts of every case differently. Just because our facts are distinguished, they are different than what the WGR facts present. Counsel, if I could just follow up on that question, because putting aside your argument about particularity kind of with a clean slate, I want to follow up on the questions about Chevron deference. If we must give Chevron deference to BIA decisions, on the issue of the particular social group, what is different about this case and WGR? I realize there's factual circumstances that may relate to the nexus, that may relate to social particularity, but simply on the issue of the defined social group, how is the social group you propose different from the one in WGR? They're not necessarily that different. In WGR, it deals with the 18th Street gang. In our case, we deal with the MS-13. As far as gang and gang, they're not that different as far as when it comes to being a former gang membership. But in WGR, the case was denied because the BIA held that there was not sufficient evidence in the record to show that the particular social group was socially distinct. That is the reason why the case was denied. It was not enough to show that it was socially distinct. That's the reason. All right. Also, what about the fact that our Fourth Circuit case, Olivia v. Lynch, rejected the use of a modifier that WGR utilized? We've already rejected that in 2015 in Olivia, haven't we, Mr. Petitioner's counsel? I'm sorry, Mr. Canary? I'm sorry. What do you mean by modifier? I'm sorry. Okay. Well, aren't there Fourth Circuit cases that support your position, particularly Martinez and Olivia? That is correct. Okay. So how do those cases support your position? In Martinez v. Holder, this court specifically held that a former gang membership is immutable. Yes, the Fourth Circuit never went into a remanded case for the BIA and the IG to decide whether it's socially distinct. But as far as the particularity, that has been resolved by the Fourth Circuit. And also, therefore, it is not— Well, immutability has been resolved by the Fourth Circuit. Particularity is what we're determining today. Yes. Yes, the Fourth Circuit did not decide on the particularity. And I believe that there's sufficient evidence in the record to show that it is particular, because particularity asks whether the proposed social group is being capable of being defined in a particular distinct so that it is recognized in a society as a discrete class of individuals. And former is someone who is not current. Judge Quattobom has a question. Judge Quattobom has a question. So, counsel, you— There's a little delay, maybe. Let me try again. Counsel, you just referenced with regard to particularity whether there's evidence in the record. And my question is whether particularity is an evidentiary question or not. I think there's a lot of authority that would suggest social distinction is an evidentiary question. My question to you is whether particularity is an evidentiary question or whether it's a pure definitional issue that we look to without regard to, you know, the proof that is put forth by either party. Thank you. Wait. Is everybody else having trouble hearing him? Yes. Okay. All right. Hold on just a second. You're very garbled. And we'll wait while he connects. Okay. All right. Mr. Connare, you were in the process of answering a question by Judge Quattobom. Do you need him to repeat that? No, I got it. I believe that the particularity question is a mixed question of law and fact. So the analysis should be, did the petitioner provide sufficient evidence to meet the definition of particularity? So it is a mixed question of law and fact, not a purely legal question. Counsel, I understand the Third Circuit may have said that, but do you have any support in Fourth Circuit case law? We seem to have said repeatedly that whether a group is a particularized social group is a question of law that we review de novo, perhaps with Chevron deference or not, but that at least in the Fourth Circuit, we've never said it's a mixed question of law. In fact, we've always said it's a question of law. So what support do you cite for the idea that it is a mixed question of law, in fact, at least in the Fourth Circuit? The First Circuit never said that, but I am asking the Fourth Circuit to reconsider its prior decision and indeed hold that it is a mixed question of law and fact, because it is impossible, very difficult. Do you agree if we, as we can, cannot do that in this panel, we can't overrule our prior precedent, that that creates a problem for you, given the deference we owe to the BIA? That is correct. I understand you need to argue that, but do you agree with that? Yes, I agree with that. I agree with that. Okay, does it make a difference that here this was a one-person BIA non-presidential decision? It wasn't a BIA panel decision? Does that make a difference? It makes a huge difference, because a one-member BIA is only afforded this kid more deference. It is not a presidential decision at all. And again, if you look at the decision of the BIA, there is absolutely no analysis done in this case. If you look at, for example... Counsel, following up on Judge Thacker's question, I think you are right and she is right, that typically single-member decisions are afforded less deference. I think the question for us is whether the BIA adopts the IJ's language, and whether the IJ relies on WGR, which is, I think, a presidential decision. So, as I read the IJ's decision, it has a good bit of discussion about WGR, and then its reasoning seems to follow that. Why would we not look at this case in terms of the BIA adopting the IJ's reasoning, when it does rely on a three-panel presidential BIA decision? I agree that, yes, the IJ discussed WGR, and the BIA did rely on that decision. But, the opinion of the BIA is not reasonable. There was no proper analysis done at all in this case. As a matter of fact, the analysis of the BIA is literally limited to three things. It is diffused, lacks particularity. When it comes to the CAT analysis, it says the petitioner relied on country conditions and general violence. The petitioner never stated that, never at all. But that is what the analysis states. There was no acquiescence analysis done. There was no aggregation analysis done per Rodriguez-Arias. Nothing at all. Yes, you can rely on the IJ, but this court should not excuse a misapplication of the law. No, no, that should not be afforded at all to the BIA. Did that answer your question, Judge Cordova? Yes, and I know Council's time is up. If he reserves some time, I would just like to ask him to address one issue when he comes back, and it's this. Do you have any argument that we do not, we are not required to apply Chevron deference here? That's an important decision, or important question for me at least. And if you have an argument that we, either it's been waived and it can be waived, I'd like to hear from you on that during your rebuttal time, please. And you have six minutes on rebuttal. Judge Richardson, do you have any further questions at this point? No, thank you. All right, then we'll hear from Government Counsel now, Mr. Stanton. Hello, can you hear me, Your Honor? Yes. All right, okay, well, may it please the Court, the interruption caused me to lose my train of thought. But very briefly, opposing counsel referred to his proposed social group of prosecutorial witnesses. He did not brief that in his opening brief to this Court, so he has abandoned that issue. So there's only one issue with respect to withholding a removal claim that is properly before the Court. That is whether or not his proposed particular social group of former gang members, not former Salvadoran MS-13 members, but former gang members, lacks particularity. Because that's the only particular social group that he articulated in his administrative appeal. Yes, Judge Becker? So, if it was articulated as former MS-13 gang members, is the Government's... Salvadoran MS-13 gang members, yes. If it was articulated as former MS-13 gang members, would the Government find that a sufficiently particular social group? Well, it's certainly more narrow than former gang members in general. But he also called it former Salvadoran MS-13 gang members. And there's no evidence at all that MS-13 is limited just to El Salvador. So, MS-13 is a notorious criminal gang that operates throughout Central America, as well as the United States. So, I mean, there will probably be a lot of the same problems that are also present in former gang members, which I'll be happy to get into. That's just what I'm on. Yeah, if you could just... I want to follow up on Judge Thacker's question. If you assume that the applicable particular social group here is former Salvadoran MS-13 gang members, is the Government's position that that fails on particularity or not? Could you answer that, you know, just yes or no, what your position is first on that? Our position is that that would also fail the particularity test for a lot of the same reasons that the agency articulated here. So, I'd be happy to go into some of them. I mean, Judge Richardson, yes? I want to return to the question that I asked your counsel. You very pointedly did not invoke Chevron deference here. I will assume that that was not by oversight, but that that was a conscious choice. But regardless, in the Fourth Circuit, correct me if I'm wrong, in Sierra Club case, we said that that's a standard of review question that we are required, even if the parties agree that it's inapplicable, it doesn't just omit it, but if you agreed it was inapplicable, we still have to determine it ourselves. And so, on that question, do you agree that we have to make the decision, in other words, the government cannot waive Chevron, at least in the Fourth Circuit, and then second, given that you cannot waive it, do you agree that it applies with respect to the WGR decision, not the one-member decision from below? Well, Judge Richardson, I'm embarrassed to admit it was indeed an oversight on my part. We're getting so many briefs that sometimes we overlook arguments. It's not an excused explanation, but no, it was not intentional. To the extent the Fourth Circuit has precedent saying that it must independently assess the Chevron applicability, I am not aware of that decision, but I'll be very grateful if you did apply it to this case. And yes, we would argue that Chevron deference is indeed appropriate in this matter, because the WGR came out in 2014, as Judge Quartermann noted, it postdated the Seventh Circuit decision. It was a public decision by a three-member panel. I'm not sure about the Fourth Circuit, but I do know that other courts have case law to the effect that when the agency, a single board member, a single immigration judge, on a public decision relies on a published board decision, then that single board decision will also be entitled to a Chevron deference. So I'm not sure what the Fourth Circuit has followed. Yes, sir? If you're familiar with it. If you're not, just say that you're not familiar. That's fine. Judge Thacker raised the question about Olivia versus Lynch, where the court, Judge Winn, rejected a modifier, to use Judge Thacker's phrase, in WGR. In essence, not giving it, although I'm not sure it discussed Chevron deference in that context. I think we lost him. Oh. Can you hear us, Mr. Stanton? It's garbled, but some sound is coming through, and it appears the captioner is actually picking up pretty well, as far as I can tell. Okay. Can you hear me? If you're familiar with Olivia versus Lynch, can you tell me why that doesn't change the applicability of Chevron to WGR in this case? The only part about Olivia that I'm familiar with was the holding, as with the case of Martinez, that a former gang member passed the immutability test. I cannot recall what Olivia said about a modifier for Chevron deference. I apologize, Your Honor. Again, in hindsight, I should have been more prepared to discuss Chevron, so I apologize. Please. But again, even... Yes, Judge Thacker? Okay, so you mentioned Martinez. That is a Fourth Circuit case in which we found that former gang members as a group passed the immutability test. Why would we not also then find that that passes for particularity? Why would it... It wouldn't make logical sense, would it? Well, I mean, just because a group is immutable doesn't mean it's necessarily particular or passes social distinction. There are three distinct tests. I mean, a person's gender is immutable, but that doesn't necessarily mean that they qualify as a particular social group, because it's... All right. Judge Thacker? You're garbled. We can't hear you, or I can't hear you very well. Can't either. All right. Yeah, we got it. Okay. Can the panel hear me now? Yes? Yes. All right. So, Judge Thacker, I believe before we lost connection, you were asking whether the court should also find that the former gang members have had the requisite particularity, given the holding in Martinez. My response is there are different tests. There are different tests. There are certainly examples where a characteristic... Yes, Judge Thacker? Yes, but in Martinez, we noted with favor, at least, the Ramos, the Seventh Circuit decision that did find particularity for former gang members as a group. What about that? Well, I mean, the court in Martinez explicitly held the particularity question open to the extent that the court cited the Seventh Circuit decision in dicta. I would respectfully submit that, as Judge Cordova noted earlier, the Seventh Circuit predated the WGR decision. And number two, with all due respect to Seventh Circuit, I really did not find that decision convincing. It said that the former gang members are not amorphous, but the immigration judge... Yes, Judge Thacker? Would current MS-13 gang members, are they a particular social group? That particular social... Current... There are policy reasons why courts have refused to recognize current active gang members as a particular social group. The thinking of the Ninth Circuit in the Artegia decision from the 2000s, the theory is that Congress would not have wanted criminals to be granted the law of asylum. The Ninth Circuit called current gang members not a particular social group, but a particular anti-social group. So, I mean, with respect to particularity, strictly within the confines of particularity, current gang members probably could... I mean, certainly closer than former gang members. Why are they closer than former gang members? You're either in or you're out. Judge Thacker, the immigration judge in this case, also the board in WGR, said it's just not that clear-cut. So, I mean, former gang members, how can people tell that? What were the parameters? I mean, do you have to actually tell how you left the gang? Well, in this case, he's got tattoos. He's got tattoos, all right. That's it. But you didn't tell anyone? Well, I don't think I would just get an MS-13 gang tattoo if I wasn't then a member and now a former member. Judge Quattlebaum has a question. I think I'm getting nowhere. Well, following up on that point, and I realize this may differ if we have Chevron issues. But even if we do, we have to find that the decision of the BIA is reasonable. And so, why aren't the issues that the immigration judge raised about the ways, you know, different ways you could be former gang members, those seem to me more appropriate for the issue of nexus, whether the persecution was on account of that group or whether the group is socially distinct than they do about particularity. I mean, particularity seems to be whether we know the boundaries of the group or not. And, you know, deference aside, what's hard about knowing whether someone is or is not in the gang member? Whether you can prove it or not is a different question. But it's not hard to figure out the boundaries, is it? Yes, the question, boundaries. In the WGR decision, one way that the board explained that the former gang membership is not particular, what's different is whether there's precedence. The board previously held that being a former policeman is particular, is definite. Because you can always tell when a policeman is no longer a policeman. He turns in his badge, he's no longer getting paid. So there's just really no debate about whether the person is a policeman or not. Former gang members, there's a lot of leeway. I mean, you have to tell someone, you have to, like, take over the acts. I mean, does it matter? Does it matter why you're renouncing your former gang membership? It's not hard to imagine a situation where someone is here in the United States illegally, he's an active gang member, he gets caught by immigration agents, he tells the immigration judge, I'm leaving my gang, I'm now a former gang member, so therefore I'm a member of a particular social group. So these are all the types of... Council, let me follow up with you. I appreciate that. I think you're focused in on, I guess, the word former. And I understand your arguments there. Let me ask you this. If the particular social group were Catholics, people who are Catholic, would that be particular? Well, I mean, yes, it would be particular, yes. It would be defined, yeah. Catholics, I mean, there's a formal initiation process, yes. Yes, there is, yeah. Yes, sir. Okay. And I guess that's kind of a little bit of my follow-up question. You know, it looks like the IJ, you know, and maybe debated whether or not, you know, how long they were in the gang or not. And I, you know, again, yeah, I'm just not sure how that relates to particularity. But, yeah, I think your other prior question probably answered it for me. Well, can you answer that question? What about if I'm a former Catholic, right? So I'm a renounced Catholic. And I know Catholic religious groups are separately defined by statute. But consider if we were applying particular social group to Catholics, it seems like all of the arguments the IJ made here would apply, right? Because not all Catholics take their faith the same way. You know, some are twice a year Catholics. Some are twice a week Catholics. You know, some keep the rosary beside the bed and some don't, right? The same way could be said about the gang members. How long were they a member? Like, when did they leave? Was it a formal renunciation or did they just stop going to church, right? I mean, all of those same questions that we talk about, the IJ talks about here, seem like they would apply to any former group. Maybe the exception being, you give the example of police officers. You know, maybe former KGB officials the same way. Maybe there's some very official groups that former applies to. But wouldn't we have the same problem when we define a group for particularity purposes by the negative? That is, you are no longer something you used to be? I definitely appreciate the question. I understand what they're saying. But with respect to, I would think, my best answer is, the problem with defining former membership, there still has to be some, there's overlap between particularity and social distinction. So how someone would know that a person is a former member would definitely go into social distinction as well. So, I mean, with respect to someone who, it's difficult, it's difficult, I mean. We have the same idea that we apply in criminal law all the time. I'm sorry. We apply this same notion in criminal law all the time. We talk about what's required to abandon a criminal enterprise. You're considered a member of that conspiracy until you abandon it. We require a formal renunciation of some sort. There's a whole set of doctrines about that. And so there might be a proof problem of determining whether I'm really a former Catholic or I'm really a former gang member or whether I'm just an inactive Catholic or an inactive gang member. And maybe there are challenges around the margin. But I'm not, I think what Judge Quattlebaum is getting at is the fact that there are proof problems doesn't mean that it's so amorphous that we don't know what it means. And help me understand why that doesn't cause you a problem. Well, I mean, as Judge Quattlebaum was indicating, there's no evidence in the record here that Salvadoran society or any society considers former gang members to be a defined group. So, I mean, the petitioner in his brief to this court, the only evidence he cited to the record was related to suspected gang members, which is a whole other discussion. But so, I mean, suspected gang members is even assuming that's a group. It's still not a particular social group that he's bringing up right here. There's just nothing in the record indicating. And this petitioner's burned proof to show that his particular social group is cognizable. And that includes the particularity test. So whether or not the society accepts former Catholics or former KGB agents, I mean, that stuff is backed up with proof. And this particular case, that's lacking. Judge Quattlebaum. So what's your authority for saying that there has to be evidentiary support for particularity? I mean, let's be, I mean, look, the BIA, you know, for whatever reason, limited its decision to particularity. You know, it may well have, I mean, it implied there may not have been proof that he was a former gang member. It certainly said he was not credible. Those are things that he'd be probably, that the immigration judge would probably be entitled to deference on. The social distinction, I think, involves proof. And there's probably evidence in the record of that. But those aren't, we don't have jurisdiction over those issues because the BIA limited its decision to particularity. And it seems like what you're arguing is getting into the issues about which we do not have jurisdiction. And back to what I said, what authority do you have that we're supposed to look for evidentiary support as opposed to just legal analysis on the issue of particularity? Well, I mean, in our brief, we did cite the Sixth Circuit decision saying that particularity issues are questions of fact should be reviewed for substantial deference. I'm not sure if this court has ever articulated the point. I don't remember looking for it, but to the extent you're asking me for Fourth Circuit authority, I don't believe I have a point either way discussing whether particularity is a question of fact or a question of law. But the Sixth Circuit says it's a question of fact. So, and with respect to jurisdictional issues, I mean, the fourth decision, I mean, it's a fair question, Your Honor, but again, it's his burden, it's the petitioner's burden to show that this PSG is connectable. And that includes the filling of all three of the WGR tests. So, okay. My time may be over. I'm happy to keep on discussing if the panel wants to discuss the Convention Against Torture claim at all. You have 20 seconds if you'd like to make an argument on that. All right, 20 seconds. I knew I was close. So, anyway. Petitioner experiences, however unfortunate, do not amount to torture. Courts are unanimous that holding an imprisonment by itself is not torture. He admitted he was treated reasonably well in prison by Salvadoran officials. The police were responsive when he was assaulted by the gangs. Petitioner decided not to follow through with charges and so. This court has noted several times the Salvadoran government has been making efforts to combat gang violence and also root out corruption. Petitioner, again, has not met his burdens of showing otherwise. Thank you. Judge Richardson or Judge Quattlebaum, do either of you have questions? All right, thank you, Mr. Stanton. We'll hear again from Mr. Kinnear. You're okay. And please start with the question that Judge Quattlebaum asked you before you finished before. I believe, Judge, that giving difference to the BIA or to the IG just for relying or for mentioning a presidential decision should not be sufficient at all. I believe what the BIA or the IG should do, yes, relying on the presidential decision is fine, but also what should follow is a proper analysis of the facts. They should engage with the evidentiary evidence. And here, that was lacking. So just saying that if the rule is for only the BIA to rely or for the judge to rely on a presidential decision is enough, then they would not engage in any proper analysis at all. So that is not sufficient. It should be more than that. Judge Richardson has a question, I think. Sorry, I just had it on mute. Oh, okay. Can I ask you to address the Fourth Circuit's decision in Zala versus Holder where we found that the group of Honduran males who refused to join MS-13 have notified authorities of MS-13's harassment and have an identifiable tormentor, that that group lacked particularity. And that's the 2012 Fourth Circuit decision. That seems to be more particular than the broad group that you've suggested here, just of former gang members. I mean, these are individuals who've resisted, who have notified law enforcement, who have an identifiable tormentor. Why, if that group is insufficiently particular, putting aside Chevron deference, why is your group of former gang members more particular than what we found not to be particular in Zala? In our case, Your Honor, our particular social group is former MS-13 gang members. So here, you have the former that is defined with particularity because you have former versus current. And then you have Salvadorian. And that is a nationality, and nationality is immutable. So you know, really, where you stand, whether it's Honduran, whether it's Salvadorian. And then you have specifically the name of the gang, which is different than 18th Street and then different than other gang members. And that depends upon whether you raised below the particular social group as former nationality-specific gang. When I read the record, it suggests to me that all you raised was former gang member. That that's the only social group you identified. Where in the record can you point me to to find where you properly raised before the IJ the more specific group that you've suggested? As a matter of fact, if you look at the decision of the IJ and also the BIA, it literally states that our social group is former Salvadorian MS-13 members. I understand that. But did you raise that issue? Yes, we did. Do you have Can you just tell me where? I just want to I just want to find it. I'm sorry, Your Honor. I don't have that in front of me. OK, that's all right. Didn't counsel? Yes. It didn't you refer the former Salvadorian MS-13 members in your brief to the immigration judge? Yes, I did. OK. Yes, I did. And and let's are you familiar? And there are a bunch of cases here. So don't don't it's fine if if everyone's not on the tip of your tongue. But Judge Richardson's questions about the Zala case, is that something that because there it looks to me like in that case that the social group has some objectivity to it. And Judge Richardson makes a good point on that. If you look at the reasoning of that case, it seems that we, our court, equated that alleged social group more to the general concept of resisting gangs. I'm not sure in fairness, that's what he alleged. But that's what we seem to say. Can you address that point? Yes, I can. And that particular social group in Zala really resembles Maref of Acosta, Maref SEG. So it's really this general concept of resisting gang recruitment. And also that is an older case. And Martinez v. Holder, which is a 2014 case, literally states the former gang membership is immutable, is immutable. And yes, the Fourth Circuit never went into particularity and remanded the case. But in this case, I believe that our social group in this case has sufficient evidence to meet the particularity problem. All right. Thank you. Do either of the other two judges have any further questions? All right. If not, we thank you both for your arguments. At this point, if we were in Richmond, we would come down from the bench to greet you all. Nonetheless, consider yourselves warmly, although virtually, greeted. We appreciate your arguments. And we'll adjourn and prepare for the next case. Thank you.
judges: Stephanie D. Thacker, Julius N. Richardson, A. Marvin Quattlebaum Jr.